***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. An employer-employee relationship existed between plaintiff and defendant on the alleged date of accident, July 21, 2005.
5. Plaintiff's average weekly wage at the time of injury was $430.33, which results in a compensation rate of $286.90.
6. The following exhibits were stipulated into evidence:
 a. Pre-Trial Agreement (Stipulated Exhibit 1); and
 b. Medical Records, paginated 1-153 (Stipulated Exhibit 2).
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 61 years old. His work history consisted mainly of work at various automotive garages in the Charlotte area.
2. Plaintiff began working for defendant in 2001 as a mechanic. He was hired by Ken Manchester, owner of defendant, who previously worked with plaintiff at Pep Boys.
3. Plaintiff's job duties required extensive standing and lifting of heavy objects, including engines and transmissions. *Page 3 
4. Plaintiff's medical records and Mr. Manchester's testimony reveal that plaintiff has a history of problems with his left knee. As early as April 8, 1997, plaintiff had complained of his left knee giving out and was diagnosed with left patella tendinitis and chronic leg pain. Plaintiff was prescribed a leg brace for his left knee in 1997.
5. Aside from his left knee pain, plaintiff also suffered from chronic low back pain and underwent surgery for this condition in 2000; however, plaintiff continued to suffer from low back pain following the surgery. Plaintiff was also diagnosed with venous stasis, a peripheral vascular disease, which caused bilateral leg swelling.
6. On March 8, 2002, plaintiff fell in a bathroom and struck his left thigh. He described severe pain especially while bearing weight on his left leg. Plaintiff treated with Dr. Patrick Ng, a family practitioner, who obtained an x-ray of plaintiff's left leg and femur, which was normal. However, plaintiff continued to complain of severe pain and Dr. Ng administered a cortisone injection on March 18, 2002.
7. On May 17, 2002, plaintiff returned to Dr. Ng and complained of severe left knee pain following an incident when he stood up and felt a pop in his left knee. Dr. Ng noted that plaintiff was limping and grimacing in pain. Dr. Ng administered another cortisone injection to plaintiff's knee on May 17, 2002. On May 24, 2002, plaintiff was seen again by Dr. Ng with complaints of left knee pain that was worse with working. Dr. Ng provided another cortisone injection.
8. On September 3, 2002, plaintiff's pain in his left knee prompted him to request that Dr. Ng refer him to an orthopaedist. On September 11, 2002, Dr. Thomas Buter, an orthopedist with OrthoCarolina, evaluated plaintiff. Plaintiff related to Dr. Buter an eight-month history of left knee pain following an injury while working on a car when his knee suddenly gave *Page 4 
way. Dr. Buter noted that plaintiff walked with a slight limp and his range of motion was limited from 10 to 120 degrees. Dr. Buter diagnosed plaintiff with left medial compartment osteoarthritis with possible meniscal tear. The medical records do not show any further orthopaedic treatment for that incident.
9. Plaintiff continued to treat with Dr. Ng who noted that plaintiff consistently ambulated with a limp and exhibited crepitus of the left knee. On February 28, 2003, plaintiff reported to Dr. Ng that he was experiencing severe left knee pain after being hit by a car door. Dr. Ng observed plaintiff grimacing and walking with a limp. Dr. Ng administered a cortisone injection to plaintiff's left knee. In July 2003, plaintiff continued to complain of severe pain in the left knee and requested a cortisone injection and another orthopaedic referral; however, the medical records do not show that plaintiff was seen by an orthopaedist at that time.
10. On November 17, 2003, plaintiff was seen at Meridian Medical Group for complaints of knee pain and low back pain. Plaintiff reported that he was unable to sleep. Plaintiff's prescription of Methadone was increased to "10 mg qid." On December 23, 2003, plaintiff returned to Meridian Medical Group with no new complaints. Plaintiff's left knee was drained at that time.
11. On January 6, 2004, plaintiff was seen by Dr. Ng for severe left knee pain. Dr. Ng noted that plaintiff grimaced in pain and ambulated slowly. He administered a cortisone injection to the knee and advised that plaintiff should seek permanent disability.
12. Throughout the remainder of 2004, plaintiff consistently presented to Dr. Ng for treatment of left knee pain. Dr. Ng administered a total of 15 cortisone injections to plaintiff's left knee in 2004. *Page 5 
13. Plaintiff continued to treat with Dr. Ng for left knee pain in 2005. Plaintiff did not received any cortisone injections in 2005.
14. Dr. Ng testified that plaintiff's left knee condition deteriorated throughout 2004 and 2005, which led Dr. Ng to continue to recommend that plaintiff seek permanent disability.
15. In 2004 and early 2005, plaintiff's attendance at work was sporadic during this period of time and his productivity faltered as a result. Mr. Manchester informally counseled plaintiff regarding these problems.
16. Mr. Manchester was well aware of plaintiff's left knee problems dating back to their time together at Pep Boys. Plaintiff consistently presented to work for defendant with a limp. Mr. Manchester, who also experienced leg problems, provided plaintiff with a leg brace when he obtained a new one. Plaintiff began to appear at work in early 2005 with a crutch. Mr. Manchester was forced to hire an assistant mechanic to assist plaintiff and to make up for plaintiff's lack of production. During this period of time, Mr. Manchester was concerned about plaintiff's health and again recommended that plaintiff pursue disability benefits.
17. Plaintiff testified that his left knee problems prior to the alleged date of injury were not significant; however, the undersigned give little weight to plaintiff's testimony regarding the condition of his knee prior to the date of injury in light of the totality of evidence which establishes that plaintiff was indeed experiencing significant knee problems prior to the date of injury.
18. Plaintiff testified that on July 21, 2005, he was putting a clutch in a truck and was working underneath the vehicle while lying on a creeper. He testified that in order to work on the clutch, he needed to remove the vehicle's exhaust pipe. Plaintiff testified that the exhaust *Page 6 
pipe was improperly connected and it fell onto the inside of his left knee. He estimated that the exhaust pipe weighed 200 pounds.
19. Plaintiff testified that Bob Mattola and Randy Bass, co-employees, were aware of the incident, however, this alleged notice is unsupported by the record. Plaintiff testified that he continued to work that day and continued to perform his job duties subsequent to the alleged incident. Plaintiff stated that he began to experience increasing pain in his left leg and that he used crutches to ambulate following this incident.
20. Plaintiff was laid off on August 16, 2005, due to sporadic attendance and lack of production. There is no evidence upon which to find that plaintiff had informed his employer of the alleged July 21, 2005, incident at work, or related his lack of production to the incident.
21. Plaintiff was seen by Dr. Ng on June 27, 2005, approximately one month prior to the alleged date of injury, complaining of severe pain in his low back and knees. Dr. Ng observed that plaintiff ambulated slowly and in pain. Plaintiff's physical examination revealed crepitus in both knees, but greater in the left.
22. On August 19, 2005, approximately three weeks after the alleged accident and three days after plaintiff's termination, plaintiff treated with Dr. Ng, who again noted that plaintiff complained of severe low back and knee pain. Dr. Ng's physical examination again revealed crepitus in both knees, greater on the left. Dr. Ng made no changes to plaintiff's treatment plan. Plaintiff testified that he told Dr. Ng that a vehicle exhaust pipe had fallen on his knee at work on July 21, 2005; however, Dr. Ng testified, and his notes show, that plaintiff made no mention of a work-related incident or reported any change in his left knee. The undersigned give greater weight to the testimony of Dr. Ng as to whether plaintiff reported the July 21, 2005 incident to him because Dr. Ng, who had been treating plaintiff for significant knee problems for *Page 7 
several years, would have likely noted the incident in plaintiff's record and would have examined the plaintiff for a change in his condition based upon the alleged incident. Thus, the undersigned find that plaintiff has failed to show that he reported the alleged July 21, 2005, incident to Dr. Ng at any time contemporaneous with the incident.
23. On November 22, 2005, approximately four months after the alleged accident, plaintiff returned to Dr. Ng with similar complaints as had been reported on prior visits. Plaintiff indicated that he had been recently hospitalized for cellulitis of the left leg. Dr. Ng's examination was unchanged and his treatment recommendations remained the same. There was no mention of an incident at work.
24. Dr. Ng, the only physician to evaluate plaintiff during this period of time, testified that between June 27, 2005, and November 22, 2005, there were no differences in his examination of plaintiff, and Dr. Ng had no changes in his recommendations for treatment of plaintiff's left knee pain. Dr. Ng also testified that plaintiff did not appear to be in any greater pain during the period of June 27, 2005, through November 22, 2005 or at any time contemporaneous with the alleged work-related incident.
25. A few months after his termination, plaintiff returned to defendant to pick up his tools. Plaintiff did not mention any alleged injury at work. Defendants' first notice of an alleged workers' compensation claim was upon receipt of plaintiff's Form 18 filed on March 7, 2006.
26. Plaintiff presented to Northeast Orthopedics in January of 2006 and came under the care of Dr. Adam Flowers and Dr. Stephen Tankersley, who are each specialists in orthopedic surgery. In Dr. Flowers' initial medical note, plaintiff reported that he had a two-year history of problems with his knee. Plaintiff indicated that he had an injury to his left knee approximately two years prior when he fell and his left knee had hurt him since then. Plaintiff *Page 8 
also related another other incident where a large heavy object fell on the inside aspect of his left knee; however, there was no mention of the timing of this incident or whether it occurred at work.
27. Dr. Tankersley diagnosed plaintiff with an old medial tibial plateau fracture that had completely collapsed. Dr. Tankersley's October 11, 2006 note indicates that plaintiff related to him that plaintiff's tibial plateau fracture occurred at some point in time approximately two years ago. Dr. Tankersley testified that the condition of plaintiff's left knee in January 2006 indicated that the appearance of the injury was at least six months old, but that he could not say for certain how much older. Dr. Tankersley indicated that the injury to the tibial plateau could have occurred anytime remote of six months. Consequently, Dr. Tankersley was unable to causally relate plaintiff's left knee medial tibial plateau fracture to the alleged incident at work.
28. On October 27, 2006, Dr. Tankersley performed a complex knee replacement with medial wedges on plaintiff's left knee.
29. Plaintiff has not worked since August 16, 2005 and was receiving Social Security Disability benefits at the time of hearing before the deputy commissoner.
30. The evidence of record is insufficient to show that plaintiff sustained a medial tibial fracture of his left knee on July 21, 2005. The greater weight of the evidence indicates that plaintiff sustained a medial tibial fracture prior to July 21, 2005. This is supported by the testimony of Dr. Ng and Mr. Manchester regarding the readily observed deteriorating nature of plaintiff's left knee, and is further supported by Dr. Tankersley's testimony that a medial tibial fracture would have caused plaintiff to limp, as he did prior to the alleged injury. Moreover, none of plaintiff's treating physicians that were deposed in this matter were able to causally relate the medial tibial fracture of plaintiff's left knee to an incident at work on July 21, 2005. *Page 9 
31. Dr. Flowers testified, and the undersigned find as fact, that plaintiff would have sought immediate medical treatment if an exhaust pipe weighing 200 pounds had fallen on plaintiff's left knee on July 21, 2005. Dr. Flowers further testified that if plaintiff had sustained a medial tibial fracture on July 21, 2005, there would have been a change in his presentation to Dr. Ng following the alleged injury and, at minimum, plaintiff would have informed Dr. Ng of the incident. Dr. Ng testified that it was not until March 2006, nearly two years after the alleged incident, that plaintiff mentioned an incident at work involving an exhaust pipe.
32. Given that there is insufficient evidence to support that plaintiff reported his injury to his employer, and given that plaintiff failed to seek any treatment at the time of his alleged injury and failed to report the alleged injury to his treating physician until nearly two years later, the undersigned find that the evidence of record fails to show that plaintiff sustained an injury by accident on July 21, 2005. The greater weight of the evidence shows that plaintiff's left knee medial tibial plateau fracture most likely pre-dated the alleged July 21, 2005 incident, given plaintiff's long history of significant knee problems that remained unchanged through the alleged period of injury.
33. The undersigned find that because plaintiff did not provide proper notice of an alleged injury by accident arising out of and in the course of his employment with defendant, defendants were materially prejudiced by the lack of such notice.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. Plaintiff has provided insufficient evidence to show the occurrence of a compensable injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to provide proper notice of an alleged injury by accident arising out of and in the course of his employment with defendant, and defendants were materially prejudiced by the lack of notice. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
This the 2nd day of November, 2007.
S/_____________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER *Page 11 
 S/_____________ PAMELA T. YOUNG CHAIR *Page 1